IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 2 4 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| WILLIAM T. ENG, ) | Civil Action No. 7:02CV00134 |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION |
| NORFOLK SOUTHERN CORP., ) | |
| Defendant. ) | By: James C. Turk<br>Senior United States District Judge |

The Plaintiff, William T. Eng, ("Eng" or "plaintiff"), through counsel, brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-15, as amended, as well as under the Civil Rights Act of 1866, 42 U.S.C. § 1981 against the defendant, Norfolk Southern Corporation ("Norfolk Southern" or "defendant"). Plaintiff alleges that the defendant discriminated against him because of his race and national origin. Plaintiff is an Asian-American of Chinese descent. The case is before the Court on the defendant's Motion for Summary Judgment. The parties have argued and briefed the issue making this case ripe for the Court's consideration. Upon review of the record and consideration of the arguments in the case, the Court is compelled to grant the defendant's motion for summary judgment.

I.

Plaintiff has been employed with Norfolk Southern since September 1978. Plaintiff has held various positions within the company, but in 2000, the relevant time period, his title was Assistant Manager-Service Contracts. At all relevant times, Rick White ("White"), Assistant Vice President managed the Material Management Department. Under White were three

"groups" each with its own director. At the relevant time, the three directors under White were Harry Fridge ("Fridge"), William Rousis ("Rousis") and Jerry Steele ("Steele"). Fridge was the director of the Service Contract group in which plaintiff worked. Each director had several managers who reported to him. Most of the managers, in turn, had assistant managers who reported to them.

At all relevant times, Eng was an assistant manager to Manager Dana Helsley ("Helsley"). Greg Sexton ("Sexton") was a manager in Fridge's group in the division of Service Contract Fleet ("Fleet"). Lee Ann Brooks ("Brooks") was an assistant manager to Sexton. S.D. Hammett ("Hammett") was also a manager in Fridge's group in the division of Service Contract Freight ("Freight"). No assistant manager reported directly to Hammett.

In October of 2000, Hammett, the manager of Freight, took an early voluntary severance package made available by Norfolk Southern. As a result, White, in connection with his three directors, examined all of the assistant managers from the Material Management department to determine who should replace Hammett as manager of Freight. Brooks and Eng were the top two candidates. Ultimately, White, with the unanimous support of his three directors, filled the Freight position by laterally moving Sexton, the manager of Fleet, to the vacated position. White then promoted Brooks, Sexton's former assistant manager, to fill the position vacated by Sexton. A third individual from within the company was then placed in the position that Brooks had vacated. The end result left Sexton as manager of Freight, Brooks as manager of Fleet, and plaintiff remaining in his position as assistant manager to Helsley. After filing a charge with the Equal Employment Opportunity Commission ("EEOC"), Eng filed this action alleging that

Norfolk Southern's decision was motivated by race and/or national origin discrimination.[1]

## II.

Upon motion for summary judgment, the Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 236-7 (4th Cir. 1995). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In determining whether a material fact is in dispute, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The non-moving party, however, must produce "significantly probative evidence" from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM International, Inc.*, 916 F.3d 924 (4th Cir. 1990). Therefore, a genuine factual dispute exists and summary judgment is improper if this Court finds, after a scrupulous review of the record, that a reasonable jury could return a verdict for Eng. *See Evans v. Technologies Applications & Service*

---

[1] The defendant argues that plaintiff cannot proceed on his claim of national origin discrimination because he only included race discrimination within his EEOC charge. Moreover, defendant argues that nation of origin discrimination is not cognizable under § 1981. Because the Court holds that plaintiff has failed to show that a genuine issue of material fact exists that Norfolk Southern discriminated against plaintiff for any unlawful reason, the Court forgoes addressing these arguments directly.

3

Co., 80 F.3d 954 (4th Cir. 1996).

Title VII and Section 1981 utilize the same framework for analyzing claims of discrimination. *Williams v. Giant Food Inc.*, 370 F.3d 423, 430, n.5 (4th Cir. 2004). Under either statute, a plaintiff can prove discrimination through direct evidence or the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Here, there is no direct evidence of race or national origin discrimination. Accordingly, plaintiff must proceed under the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of race discrimination. In order to establish the *prima facie* case in a failure-to-promote claim, a plaintiff must establish that he: 1) is a member of a protected class; 2) applied for the position in question; 3) was qualified for the position; and 4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004) (citing *Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995)). If the plaintiff fails to establish a *prima facie* case, the inquiry ends and the Complaint must be dismissed. *See King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003), *cert. denied*, 124 S. Ct. 922 (2003) (concluding that since plaintiff did not establish a *prima facie* case as to his discrimination claims, the employer was under no duty to supply an explanation for the adverse employment decision).

If, however, the plaintiff does establish his *prima facie* case a presumption exists that the employer unlawfully discriminated against the employee. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). This presumption, in turn, places on the defendant the burden of producing evidence "that the adverse employment actions were taken 'for a legitimate,

4

nondiscriminatory reason.'" *Id.* at 507 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant presents such evidence, "the *McDonnell Douglas* framework - with its presumptions and burdens - is no longer relevant." *Id.* at 510. The burden is on the plaintiff, then, to show that race was the actual motivating factor for the adverse employment action. *Reeves v. Sanderson Plumbing Products, Inc.*, 590 U.S. 133, 143 (2000) (citing *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)). Plaintiff may meet this burden by showing that the employer's proffered explanation was mere pretext. *Id.* The fact finder, then, is permitted to infer from the pretext of the defendant's explanation the ultimate fact of discrimination. *Id.* at 147.

### III.

Even if plaintiff could establish his *prima facie* case, Norfolk Southern has advanced a legitimate, nondiscriminatory reason for not promoting Eng. Norfolk Southern explained that laterally transferring Sexton and promoting Brooks was the better personnel decision because Sexton was an excellent manager and Brooks was more ready for promotion than Eng. Brooks had substantial experience in Fleet having been an assistant manager in the department for two years and an employee within the department for seven years. Moreover, Norfolk Southern felt that Brooks showed excellent potential as a manager, whereas it had concerns over Eng's ability to manage a department.[2]

---

[2]At oral argument, defense counsel explained Norfolk Southern's rationale behind its decision by reading from White's deposition. His deposition states:
> It was a combination of the scenario of moving a proven Manager to the freight area and moving an absolute expert in the subject matter that we had a lot of confidence in as far as managerial skills to head up the fleet group. We felt that gave us two solid managers. Where the other we would have had a solid fleet group because we had a proven manager and a solid expert in that group, but we

5

Because Norfolk Southern has offered a legitimate, nondiscriminatory explanation for promoting Brooks instead of Eng, plaintiff must demonstrate, at this stage in the case, that a genuine issue of material fact exists that Norfolk Southern's proffered rationale for not promoting Eng was pretext. *See Reeves*, 530 U.S. at 142. Plaintiff's argument boils down to his belief that Norfolk Southern orchestrated a grand scheme of shifting personnel in order to avoid promoting Eng because he was Asian-American while making Brooks appear more qualified for promotion. Plaintiff's beliefs, however, simply are not relevant. *Evans*, 80 F.3d at 960-61. (recognizing that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff). Nor do they create a genuine issue of material fact in dispute.

The undisputed evidence before the Court is that certain characteristics were required of managers at Norfolk Southern, namely organizational skills, initiative, judgment and dedication. Dep. Ex. 5[3]; Eng's Dep. at 38-41. It is undisputed that plaintiff was informed, prior to the decision not to promote him, that he needed improvement in all of these required characteristics. In 1985, Eng's then supervisor, Richard Krause, suggested that plaintiff could "[w]ork on defining areas of importance where time should be spent and minimize time on routine purchases." Dep. Ex. 7. In 1989, Steele, Eng's supervisor at the time, noted that plaintiff "need[ed] to work on setting priorities and follow up." Dep. Ex. 9. Then, in 1991, Steele went

---

> would have a question mark out here in the freight job having promoted Bill to that. We didn't deal with that question mark when we had an opportunity to go with the organization that we felt gave us the best chance to succeed.

White Dep. at 120.

[3]Unless otherwise specified all citations to deposition exhibits are to the deposition exhibits admitted at the plaintiff's deposition and submitted to this Court as part of the defendant's summary judgment evidence.

6

so far as to ask that Eng be removed from under his supervision because of borderline "unethical purchasing practices" by Eng as it related to vendors. Steel Dep. at 13-25; Dep. Ex. 22.

Between 1993 and 1998, Eng's supervisors commented that he needed to improve in several areas. Dennis McMahon commented that Eng needed to "spend a little less time on low dollar items." Dep. Ex. 10. Rousis wrote that Eng tended "to dwell on smaller matters while larger, more important ones wait. Rousis also felt that Eng needed to "learn to more effectively utilize available time" and "work beyond normals hours to handle workloads and improve skills, especially if he is interested in being considered for promotion." Dep. Ex. 11. Fridge noted that Eng could improve his performance by "prioritiz[ing] workload by level of importance." Dep. Ex. 13. Sandy Reynolds noted that Eng "need[ed] to continue to work on completing projects in a timely manner." Dep. Ex. 14. She also noted that Eng could improve if he "[p]rioritize[d] work to insure critical work is handled promptly." *Id.*

Finally, in 2000, Helsley, then Eng's supervisor, noted that Eng could improve by "[p]rioritiz[ing] and consider[ing] outstanding issues prior to time away from office." Dep. Ex. 15. And in 2001, Helsley noted that Eng needed to "demonstrate willingness to work extended hours as needed and break from the 8 to 5/Mon.-Fri. routine." Dep. Ex. 16.[4]

Plaintiff has provided the Court with nothing that disputes this evidence. Plaintiff attempts to argue around this evidence, contending that a jury could find pretext in Norfolk Southern's explanation since plaintiff was considered a good employee. Indeed, it is not disputed that plaintiff was a good assistant manager. Plaintiff had 22 years of experience with

---

[4]Although this evaluation was completed after the relevant personnel decisions were made, the evaluation period was for the preceding twelve months. Thus, the Court finds it relevant.

7

the company, 13 of those years as an assistant manager. He had substantial field experience and was a Lifetime Certified Purchasing Manager. Plaintiff also had more than 5 years of experience in negotiation of rail and truck freight. Finally, plaintiff had a Bachelor of Science degree in Business Management. Despite this impressive list, however, none of it disputes the evidence that Eng needed improvement in other necessary managerial characteristics.[5] Moreover, that Eng was a good employee, yet not promoted, does not by itself create an inference that Norfolk Southern's explanation for not promoting him was mere pretext. *See Evans*, 80 F.3d at 960 (finding no discrimination where company offered substantial evidence that management considered the plaintiff not yet ready for a supervisory position despite considering her "good at her job").

Plaintiff also argues that a jury could find incredulous defendant's assertion that making three personnel changes (Sexton to Freight, Brooks to Fleet and a third person to take over Brooks' job) was less disruptive than merely moving Eng to the Freight position. Plaintiff points out that the move required Norfolk Southern to train an entirely new person to be an assistant manager in Fleet, that Sexton's transfer took him from a position he loved before he has the opportunity to become proficient at his duties and Brooks was not familiar with the tasks of the

---

[5] At oral argument, plaintiff's counsel argued that because the comments that Norfolk Southern relies on to show that Eng was not ready for promotion were found in the section on the evaluation form which describes steps the employee can take for improvement, rather than the section of the evaluation form meant for criticism, Norfolk Southern's claim that it was concerned about Eng's ability to manage is mere pretext. Again, Norfolk Southern has not disputed that Eng was a good employee. Norfolk Southern's explanation was that "Eng had displayed behavior in the past which, according to the Directors, forecast Eng to be a marginal Manager if promoted." Norfolk Southern Corporation's Memorandum in Support of its Motion for Summary Judgment ("Defendant's Memo.") at 5. Plaintiff's evaluation forms contain comments that support Norfolk Southern's explanation, even if they are merely steps for Eng to take to improve. That he was not "criticized" does not negate the evidence showing that many of Eng's supervisors shared the opinion that Eng needed improvement in certain areas.

manager in Fleet. Ostensibly, plaintiff argues that simply moving Eng to the Freight position would have been less disruptive for the company and, therefore, Norfolk Southern's explanation was mere pretext.

Plaintiff's argument, however, is not persuasive. First, Eng conveniently ignores that Norfolk Southern would have had to train someone to replace Eng. Thus, the personnel decision that Norfolk Southern decided on involved only one extra move than had it moved plaintiff to Freight, not two, as plaintiff contends. Moreover, whether the decision to move Sexton and Brooks, rather than just Eng, was actually less disruptive is speculative and irrelevant. The question before this Court is whether evidence exists that Norfolk Southern's rationale was pretext, not whether the decision was actually a wise business decision. *See, e.g. Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997).

In any event, the evidence does not support plaintiff's assertion that there are genuine issues of material fact in dispute as to whether Norfolk Southern's rationale was pretext. Plaintiff's entire argument here is based on his own opinion that he was the right man for the job. As stated above, however, plaintiff has provided no evidence to dispute Norfolk Southern's expressed concerns over his ability to be a manager or the instability it may have caused had plaintiff been promoted and turned out to be a marginal manager. In addition, the undisputed evidence before the Court is that Sexton was an excellent manager who could be transferred to Freight with little problem and that Brooks was an absolute expert in the Fleet department and could be promoted with little disruption.[6]

---

[6]Plaintiff contends that the evidence shows that Brooks had little experience in the tasks that would be required of her as manager of Fleet and, therefore, promoting her was not as "seamless" as defendant now contends. Beside the fact that defendant did not contend that the promotion was "seamless", only less disruptive, plaintiff fails to recognize that the undisputed

9

Plaintiff also argues the record in this case provides sufficient basis for a reasonable juror to disbelieve defendant's assertion that Brooks was more ready for promotion than Eng. Eng, comparing himself to Brooks, points out that he had 22 years of purchasing experience; Brooks largely performed non-purchasing work prior to her promotion. Eng has field experience; Brooks did not. Eng was a Lifetime Certified Purchasing Manager; Brooks was not certified until after her promotion. Eng had more than five years of experience in negotiation; Brooks had no negotiation or purchasing experience. Eng has been an assistant manager for 13 years; Brooks was only an assistant manager for 16 months. Eng has experience with Freight; Brooks had not experience with the manager's job in Fleet. Eng had a college degree; Brooks did not. Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memo.") at 26-26.

As stated above, this list, while impressive, does not dispute Norfolk Southern's evidence that Eng lacked certain other qualities necessary for a manager to possess. First, there is nothing in the record to suggest that a college degree was necessary or made someone more qualified for either the Freight or Fleet position. Moreover, plaintiff misrepresents some of Brooks' qualifications. For instance, plaintiff contends that Brooks had very little purchasing experience, but, in fact, she spent four years as a purchasing supervisor in the Material Management department, Car Group. Dep. Ex. 6. In fact, the very portion of Brooks' deposition testimony that plaintiff cites to show she had no purchasing experience is where Brooks states that she did,

---

evidence was that he had no Fleet experience at all. Thus, there is absolutely no indication that promoting plaintiff to the Fleet position would have been less disruptive to the department. Even assuming there is some issue of fact disputed as to whether Brooks was as much of an expert in Fleet as Norfolk Southern claims, this does not create genuine issue of *material* fact in dispute over whether Norfolk Southern's explanation that moving Brooks up in Fleet was less disruptive for the company.

10

in fact, have purchasing experience outside of Fleet. Brooks Dep. at 24.

Despite all of this, however, it is clear that any comparison between Eng and Brooks must be for the Fleet position.[7] Brooks had Fleet experience. Eng had none. Eng. Dep. at 21. Norfolk Southern was concerned over whether Eng had the proper judgment and dedication to be a manager. There is no indication that Norfolk Southern had these same concerns regarding Brooks. Rather the evidence before the Court is that Norfolk Southern had a great deal of confidence in Brooks as a manager. White Dep. at 120.

While Eng ably articulates why he thinks he should have been promoted, he presents no evidence that Norfolk Southern's proffered rationale that Brooks was more ready for promotion was pretext. The most plaintiff provides the Court is an employee evaluation from 1989 in which Brooks was rated as overall needing improvement and one from 1995 where Brooks was rated as needs improvement in the area of plan/followup. Plaintiff's Memo., Ex. 16. Plaintiff cites these evaluations while trying to argue that all employees need improvement, thus, Norfolk Southern's reliance on Eng's evaluations stating that he needs improvement is suspect. It is not, however, one or two evaluations on which Norfolk Southern relies. Rather, Norfolk Southern relies on no less than nine evaluations over a span of sixteen years that address the same areas in which Eng needs to improve. That Brooks had two evaluations in which she was cited as needing improvement is not sufficient evidence to allow a jury to conclude that Norfolk Southern's explanation that Brooks was more ready for promotion than Eng was pretext.

Finally, plaintiff asserts that Norfolk Southern's subjective justifications for not

---

[7] In his failure to promote case, plaintiff must show that he was the better qualified candidate for the position sough. *Evans*, 80 F.3d at 960. Plaintiff has not argued that he was more qualified than Sexton for the Freight position.

11

promoting him, compared with his performance evaluations and his supervisor's recommendation suggest pretext. Again, plaintiff's argument is essentially that because he was a good employee and not promoted, Norfolk Southern must have discriminated against him because of his race. This is not enough to overcome summary judgment. Moreover, a "subjective" justification for not promoting an employee does not automatically create an inference of pretext. *See Evans*, 80 F.3d at 960.

Ultimately, the undisputed evidence is that as between plaintiff and Brooks, Norfolk Southern had reservations over Eng's ability to function as a manager, but had extreme confidence in Brooks' ability to be a manager. Brooks' expertise, however, was in the Fleet department. Since the available position was in Freight, the company decided to move the manager of Fleet, a proven manager capable of handling the Freight department, to the vacant position. This allowed Brooks to take the now vacant manager's position in Fleet. Defendant explains that this gave the company two solid managers in both Freight and Fleet rather than one solid manager in Fleet and one questionable manager in Freight. Nothing presented by the plaintiff creates a genuine issue of material fact as to whether this explanation was mere pretext. Accordingly, defendant's motion for summary judgment must be granted. An appropriate order shall this day issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER:   This 24th day of May, 2005.

/s/ James C. Turk
Senior United States District Judge